IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

GWENDOLYN WAGGONER, )
)
        Plaintiff, )
)
vs ) Case No. CIV-13-1133-D
)
DEBORAH LEE JAMES, Secretary, )
Department of the Air Force, )
)
        Defendant. )

# **O R D E R**

Before the Court is Defendant's Motion for Summary Judgment [Doc. No. 41], which is fully briefed. Defendant seeks a judgment as a matter of law pursuant to Fed. R. Civ. P. 56 on all claims properly asserted under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq*.[1] Although Plaintiff, who appears *pro se*, failed to file a timely response, the Court granted her additional time to respond and noted the requirements of LCvR56.1. *See* 9/18/14 Order [Doc. No. 42]. Plaintiff then responded but failed to comply with LCvR56.1 or the requirements of Rule 56(c); she has provided no evidentiary support for her factual positions.[2] Thus, the Court considers the facts stated by Defendant, to the

---

[1] By Order of February 13, 2014, the Court dismissed for lack of jurisdiction all claims except Title VII claims of employment discrimination and retaliation for which administrative exhaustion was shown. *See* 2/13/14 Order [Doc. No. 26]. Plaintiff's subsequent requests to amend the Complaint have been denied. *See* 4/29/14 Order [Doc. No. 36]; 1/14/15 Order [Doc. No. 50].

[2] Plaintiff refers in her response brief to "Exhibits 1-19." *See* Pl.'s Resp. [Doc. No. 43], p.4. But no exhibits were provided with the brief, and none were attached to the Complaint. Plaintiff also refers to prior submissions, which are not otherwise identified. She may be referring to an administrative record compiled in agency proceedings. The only administrative documents submitted in this case are the EEOC decision of March 15, 2013, concurring in the Merit System Protection Board's findings, and a few documents related to the appeal. None of the documents to which Plaintiff refers, and no materials contemplated by Rule 56, have been filed of record in this case.

extent they are properly supported by the cited materials, to be undisputed for purposes of the Motion. *See* Fed. R. Civ. P. 56(e)(2); LCvR56.1(c).

## Background

Plaintiff Gwendolyn Waggoner, an African American woman, is a former civilian employee of the Department of the Air Force. In this action, she asserts Title VII claims of race, color, and gender discrimination and retaliation in the termination of her employment in May, 2009. Plaintiff timely filed suit in the United States District Court for the Western District of Kentucky, where she resides, and the action was subsequently transferred to this judicial district, where the events occurred. In compliance with the Court's Scheduling Order, Defendant now seeks summary judgment on all claims on the grounds that Plaintiff cannot establish a *prima face* case of discrimination or retaliation. Alternatively, Defendant asserts that legitimate, nondiscriminatory reasons for terminating Plaintiff's employment existed, and that she cannot establish the decision was made because of her gender, race, or a complaint of discrimination. Defendant's arguments are primarily based on the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), and as to retaliation, the "but-for causation" requirement of *University of Texas Southwest Medical Center v. Nassar*, 133 S.Ct. 2517, 2533 (2013).

## Standard of Decision

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under

2

the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.* If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." *See* Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## Statement of Undisputed Facts[3]

In December 2005, the Air Force hired Plaintiff for a one-year term of temporary employment at Altus Air Force Base. In June 2006, Richard Vassella, Chief of Operations Plans, recruited Plaintiff to work in the Operations Plans section and extended her employment for an additional year. In December 2007, Major Keith Hawkins became the Chief of Wing Plans and the first-level supervisor for both Mr. Vassella and Plaintiff.

Near the end of the extended term, Mr. Vassella encouraged Plaintiff to apply for a permanent position. Plaintiff submitted an application through the ordinary process, and on February 4, 2008, Maj. Hawkins hired Plaintiff – on Mr. Vassella's recommendation – for a permanent position in the Operations Plans section. As the only full-time administrative staff member in the section, Plaintiff "serve[d] as both the operations plans management program assistant and information manager for the 97 AMW Plans and Programs office." *See* Def.'s Mot. Summ. J., Ex. 4 [Doc. No. 41-4], p.2 (ECF page numbering). Her critical duties included, among many other things, receiving telephone calls and greeting visitors. The position required Plaintiff to report for work when scheduled and to work closely with other section employees.

As an Air Force employee, Plaintiff was covered by standard Air Force Instructions then in effect, and she was also a member of a collective bargaining unit covered by a negotiated agreement. Under the terms of her employment, Plaintiff earned annual and sick

---

[3] This statement includes facts presented by Defendant that are properly supported and not opposed in the manner required by Rule 56. All facts are stated in the light most favorable to Plaintiff.

leave at a combined rate of 12.5 percent of her work schedule. Stated differently, she earned 10 total hours of leave for every 80 hours of scheduled work.

In March 2008, Plaintiff was approved for an Alternative Work Schedule ("AWS"), which required that she work from 7:00 a.m. to 5 p.m. each day except alternate Fridays, which she had off. Although she claims it was not intentional, Plaintiff did not always arrive at work on time. She attributes her lack of punctuality to "anything that a reasonable employee would consider needing leave for," including car issues, traffic tickets, and unplanned absences due to stress. *See* Waggoner Dep. [Doc. No. 41-1], 99:16-17, 230:8-10. Plaintiff believed that her tardiness would be excused if she called into the office and gave notice that she would be late. She based this belief on Air Force regulations, which give an employee's supervisor the discretion to excuse the employee's tardiness. Further, Plaintiff believed her tardiness was not a problem as long as she worked late or during her lunch hour. Maj. Hawkins advised Plaintiff that this was not an approved practice.

Over time, Plaintiff's tardiness became a consistent issue, and Maj. Hawkins resorted to discipline. On July 23, 2008, Maj. Hawkins counseled Plaintiff about her tardiness for the first time. She was 40 minutes late the next day. Maj. Hawkins counseled Plaintiff again two weeks later and offered her the option to give up AWS, but she declined this option. Maj. Hawkins informed Plaintiff that she needed to work her scheduled hours and to arrange any changes or absences in advance. Despite these conversations and disciplinary measures, continued tardiness caused Plaintiff to receive verbal counseling on two other occasions – September 24, 2008, and February 9, 2009.

On September 22, 2008, Plaintiff arrived at work 85 minutes late. Maj. Hawkins presented her with an oral admonishment, revoked her AWS, and informed Plaintiff that more severe discipline, including removal from employment, could result if her tardiness and unapproved absences continued. Earlier in September 2008, Maj. Hawkins had approved Plaintiff's request for unpaid leave because she had exhausted accrued leave. With the oral admonishment, Maj. Hawkins informed Plaintiff that he would no longer approve unpaid leave because she had abused such leave, and that future requests for sick leave would be handled on a case-by-case basis.

Plaintiff's subsequent use of excessive sick leave prompted Maj. Hawkins to speak with the Civilian Personnel Office ("CPO") about potential disciplinary options. Based on these conversations, Maj. Hawkins again counseled Plaintiff regarding her absences, and issued a Notice of Sick Leave Control on February 13, 2009. Pursuant to the Notice, Plaintiff was given specific requirements to be met to receive approval for sick leave, including a requirement to submit verifying medical information within three workdays of returning to her duties. This requirement was consistent with Air Force regulations and the negotiated agreement. When Plaintiff failed to provide the necessary documentation, she was marked as absent without leave (AWOL), as permitted by Air Force regulations when an employee fails to comply with sick leave procedures.

After being disciplined, Plaintiff complained to Lieutenant Colonel Michael Babyak, who was the Director of Staff and oversaw both military and civilian personnel, about her work environment. Lt. Col. Babyak informed her there were several available remedies, and

he investigated her claims. On March 6, 2009, Maj. Hawkins issued an oral admonishment to Plaintiff on another issue, and she requested a transfer to another office. After conferring with the CPO, Lt. Col. Babyak temporarily detailed Plaintiff to the chapel for a 30-day period beginning March 11, 2009. This detail gave Plaintiff an opportunity to demonstrate her abilities under different supervision, this time by the base chaplain Major Stephenson-Bratcher (a female).

Plaintiff found the chapel to be a calm environment and wanted to be assigned there on a permanent basis. However, her tardiness and attendance continued to be an issue. On March 31, 2009, Maj. Stephenson-Bratcher gave Plaintiff an oral admonishment regarding this issue. Of 17 duty days, Plaintiff had been on time for work only nine days; she had been late two days and absent from work six days. On March 24, 2009, she did not go to work, did not claim to be sick, and did not call the office to provide notice of her absence.

Because the transfer did not produce an improvement in Plaintiff's tardiness and attendance issues, Maj. Hawkins conferred with the CPO and issued a Notice of Proposed Removal on April 17, 2009. The Notice cited three grounds for removal: (1) Plaintiff had failed to maintain a regular work schedule; (2) her total of unauthorized absences was greater than eight hours (she allegedly was AWOL a total of 43 hours); and (3) she made a false statement to her supervisor regarding her time and attendance. On April 24, 2009, Plaintiff submitted a written response to Lt. Col. Babyak, the deciding officer regarding the Notice of Proposed Removal. In the response, Plaintiff did not dispute the excessive absences claim, but attempted to justify her attendance as being no worse than other employees. In testimony

7

given in this case, Plaintiff has admitted that she had difficulty arriving at work on time and working 40 hours per week, but she maintains that she "worked as much as [she] possibly could." *See* Waggoner Dep. [Doc. No. 41-1], 93:1-14, 99:19-25, 136:7-17.

Lt. Col. Babyak investigated the charges against Plaintiff by reviewing her time cards, doctor's notes, and her response to the proposed removal. He also consulted the CPO about whether Plaintiff's medical issues might warrant a different work schedule. After the investigation, Lt. Col. Babyak determined that a preponderance of the evidence supported the allegations of failure to maintain a regular work schedule and unauthorized absences in excess of eight hours, but he concluded that the allegation of making a false statement to her supervisor was not sufficiently supported and should be dismissed. After performing a detailed analysis to determine the appropriate action, Lt. Col. Babyak concluded that Plaintiff's conduct warranted removal from federal service. On May 12, 2009, he issued a Notice of Final Decision on the Proposed Removal, which was effective May 18, 2009.

## Discussion

**A.  Discriminatory Termination**

The familiar burden-shifting analysis of *McDonnell Douglas* for employment-related claims based on circumstantial evidence has three steps:

> (1) the plaintiff must establish a prima facie case of discrimination or retaliation; (2) the defendant employer must offer a legitimate non-discriminatory reason for the adverse employment action; and (3) the plaintiff must show there is at least a genuine issue of material fact as to whether the employer's proffered legitimate reason is genuine or pretextual.

*Smothers v. Solvay Chemicals, Inc*., 740 F.3d 530, 538 (10th Cir. 2014); *see McDonnell Douglas,* 411 U.S. at 802-04.

Although Defendant challenges Plaintiff's ability to establish a *prima facie* case of discrimination, only her ability to show satisfactory job performance is questioned. Defendant argues that Plaintiff was not satisfactorily performing her job because regular attendance was a requirement of her position. This argument admittedly conflates the *prima facie* case and the question of pretext. *See* Def.'s Mot. Summ. J. [Doc. No. 41], p.15 n.3. Accordingly, the Court elects to assume for the purpose of discussion that Plaintiff could make the minimal showing needed to establish a *prima facie* case of racial and gender discrimination, and proceeds directly to the question of whether Plaintiff can show Defendant's stated reasons for her termination are pretextual. *See Smothers*, 740 F.3d at 530 ("plaintiff's burden at the prima facie stage requires only a small amount of proof necessary to create an inference of discrimination or retaliation"; the burden is "not onerous" but is "slight" and "relatively lax") (internal quotations omitted).

A plaintiff demonstrates pretext by showing either "that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." *Texas Dep't Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Under the latter approach:

> A plaintiff demonstrates pretext by producing evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons. Evidence of pretext may include prior treatment of plaintiff; the employer's policy and

> practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating . . . criteria); and the use of subjective criteria.

*Jaramillo v. Colorado Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005) (internal quotations and citations omitted). Regarding disciplinary decisions, the court of appeals recently stated:

> Evidence of pretext may take any number of forms, including evidence the plaintiff "was treated differently from other similarly-situated employees who violated work rules of comparable seriousness." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000). An employer's purported reason may also be undermined by evidence the company failed to adequately investigate the offense for which it purportedly fired the plaintiff.

*Smothers*, 740 F.3d at 539 (citations omitted). However, "the relevant inquiry is not whether the employer's proffered reasons were wise, fair, or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Sarkar v. McCallin*, 636 F.3d 572, 576 (10th Cir. 2011) (internal quotation omitted).

Upon consideration of the summary judgment record, the Court concludes that Plaintiff has failed to demonstrate a triable issue of discrimination or pretext. Plaintiff argues that Mr. Vassella actually directed her work and controlled her schedule, that he acted toward her in a demeaning and discriminatory way, that his behavior caused her stress and physical illness, that she performed her job duties well and even assumed extra duties, that Lt. Col. Babyak did not fully and timely investigate her complaints about her work environment, that she continued to work for Mr. Vassella and Maj. Hawkins after she was detailed to the chapel, and that any evidence supporting discipline did not warrant her removal. In addition to lacking any supporting materials, Plaintiff fails to address the critical fact that she must

prove to prevail on her discrimination claim: that Lt. Col. Babyak's decision to terminate her employment for poor attendance and unauthorized leave was actually motivated by racial or gender discrimination. Plaintiff points to nothing from which a reasonable factfinder could infer that Lt. Col. Babyak did not honestly believe her poor attendance and leave violations warranted the termination of her employment.

In short, the Court finds no basis in the summary judgment record upon which a finding of racial or gender discrimination in the termination of Plaintiff's employment could reasonably be made. Therefore, the Court finds that Defendant is entitled to summary judgment on Plaintiff's discrimination claim.

**B.     Retaliation**

To establish a *prima facie* case of retaliation, "a plaintiff must show that (1) she engaged in protected opposition to discrimination; (2) a reasonable person would have found her employer's subsequent action to be materially adverse; and (3) a causal connection exists between her protected activity and the employer's action." *Semsroth v. City of Wichita*, 555 F.3d 1182, 1184 (10th Cir. 2009); *see Ward v. Jewell*, 772 F.3d 1199, 1202 (10th Cir. 2014). Defendant asserts that Plaintiff cannot satisfy the first element because her complaint of demeaning treatment by Mr. Vassella was not protected opposition to discrimination.

Title VII protects employees from "retaliation for opposing, or making a complaint about, unlawful employment practices." *See Nassar*, 133 S. Ct. at 2530. An "unlawful employment practice" under Title VII is defined as "discrimination on the basis of . . . race, color, religion, sex, national origin, opposition to employment discrimination, and submitting

or supporting a complaint about employment discrimination." *Id*. at 2532. Thus to be protected, an employee's complaint must be about discrimination prohibited by Title VII. *See Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) ("an employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII"). The employee need not prove the employer actually engaged in a violation of Title VII, but the employee must show that he or she had a reasonable, good faith belief that the opposed behavior was discrimination prohibited by Title VII. *Hertz v. Luzenac Am., Inc*., 370 F.3d 1014, 1015-16 (10th Cir. 2004).

In this case, Plaintiff contends the "demise" of her employment relationship with Defendant began with a complaint she made about Mr. Vassella on May 21, 2008. *See* Pl.'s Resp. Br. [Doc. No. 32], p.7. She points out that there are "no records of discipline of any sort until after her complaint on 21 May 2008 of discriminatory acts." *Id*. p.5. Defendant has submitted a copy of an email message apparently sent by Plaintiff to Maj. Hawkins on that date. *See* Def.'s Mot. Summ. J., Ex. 9 [Doc. No. 41-9]. Nothing stated in that message suggests a complaint of discrimination prohibited by Title VII. Instead, Plaintiff appears to be complaining about hurtful remarks made by Mr. Vasella (referred to as "Rick") concerning mistakes in her work, being made to feel she was "considered to be the least intelligent in our office," and being "treated like a 12 year old." *See id*. No mention is made of any racial or gender-based remarks or any conduct that might be considered sexual harassment, as now argued in Plaintiff's summary judgment brief. Accordingly, on the

record presented, Plaintiff has failed to come forward with sufficient facts or evidence to establish that she engaged in protected opposition to discrimination.

Assuming Plaintiff could establish a *prima facie* case of retaliation, Defendant also contends Plaintiff cannot show that Lt. Col. Babyak was motivated by retaliation. The court of appeals has held that retaliatory motive can be inferred "from a close temporal proximity between an employee's protected conduct and an employer's adverse employment action. But unless the [adverse action] is very close in time indeed to the protected activity, . . . a plaintiff cannot rely on temporal proximity alone and must come forward with additional evidence to establish causation." *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1204 (10th Cir. 2008) (citations omitted); *see also Ward*, 772 F.3d at 1203. Further, under *Nasssar*, a plaintiff must establish that protected activity "was a but-for cause of the alleged adverse action by the employer." *See Nassar*, 133 S. Ct. at 2534.

In this case, Plaintiff's alleged complaint of discrimination in May 2008 was far removed from her subsequent termination in May 2009, or even the Notice or Proposed Removal issued in April 2009. Further, Plaintiff does not argue, or make any attempt to show, a connection between Lt. Col. Babyak's decision to terminate her employment and any complaint she had made about Mr. Vassella. At most, her position appears to be that a retaliatory motive of Maj. Hawkins or Mr. Vassella should be imputed to Lt. Col. Babyak. Such a "Cat's Paw" theory of liability does not apply, however, when the decision maker conducts his or her own investigation without relying on the biased recommendation of a subordinate. *See Ward*, 772 F.3d at 1205; *see also Lobato v. N.M. Env't Dep't*, 733 F.3d

13

1283, 1295-96 (10th Cir. 2013). It is undisputed in this case that Lt. Col. Babyak engaged in his own independent investigation before deciding that Plaintiff's removal was warranted.

Upon consideration of the record in the light must favorable to Plaintiff, as required by Rule 56, the Court finds that Plaintiff has failed to demonstrate a genuine dispute of material fact that precludes summary judgment. On the record presented, no reasonable juror could find that Plaintiff's removal from employment in May 2009 was motived by retaliation for a complaint of employment discrimination. Therefore, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

## Conclusion

For these reasons, the Court finds that Defendant is entitled to summary judgment on all Title VII claims properly presented by the Complaint.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 41] is GRANTED. Judgment shall be entered accordingly.

IT IS SO ORDERED this 21st day of January, 2015.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE